UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

CAREMARK THERAPEUTIC
SERVICES,

                    Plaintiff,

          v.                          05 Civ. 00728 (VM)

MICHAEL O. LEAVITT,[1]
Secretary of the Department           **DECISION AND ORDER**
of Health and Human Services,
and the CENTERS FOR MEDICARE &
MEDICAID SERVICES,

                    Defendants.

------------------------------X

**Victor Marrero, United States District Judge.**

Plaintiff Caremark Therapeutic Services ("CTS") brings
this action against the Secretary of the Department of Health
and Human Services (the "Secretary") and the Centers for
Medicare & Medicaid Services (collectively "Defendants") for
judicial review of a final decision of the Secretary pursuant
to 42 U.S.C. §§ 405(g) and 1395ff(b)(1). CTS seeks
reimbursement for pharmaceutical services provided to a
hemophilia patient. Defendants contend that the Southern
District of New York is not the proper venue for this action
and move to dismiss on that basis under Rule 12(b)(3) of the
Federal Rules of Civil Procedure. They further dispute the

---

[1] Michael O. Leavitt is substituted for his predecessor, Tommy Thompson,
as Secretary of the Department of Health and Human Services. See Fed. R.
Civ. P. 25(d).

existence of subject matter jurisdiction with respect to all
but one of CTS's causes of action and move to dismiss these
claims under Rule 12(b)(1) of the Federal Rules of Civil
Procedure. For the reasons discussed below, Defendants'
motion to dismiss for improper venue is GRANTED and the case
is transferred to the Central District of California.

## I. **BACKGROUND**

CTS is a home health care provider, also licensed as a
pharmacist. (Compl. ¶ 7.) CTS is the assignee of a Medicare
beneficiary covered by Medicare Part B. (Compl. ¶ 6.)
Medicare Part B is a supplemental insurance program that
covers outpatient medical and other health services, including
home health care services, for eligible individuals. See 42
U.S.C. § 1395k. CTS indicates that it was incorporated in
California on its Medicare Federal Health Care
Provider/Supplier Enrollment Application (the "Enrollment
Application") (Enrollment Application, attached as Exhibit A
to the Declaration of Rachel H. Park, dated April 21, 2005
("Park Decl."), at 9.)[2] CTS lists its practice location as
Redlands, San Bernardino County, California and provides a
correspondence address in Los Angeles on the Enrollment

---

[2] The legal business name provided on the Enrollment Application is
Caremark, Inc., doing business as Caremark. (Park Decl. Ex. A at 9.)
Without more, it would be unclear that this is in fact CTS's Enrollment
Application. However, CTS admits that this document is in fact its
Enrollment Application. (Pl.'s Br. 6-7.)

Application. (See id.)  Correspondence regarding Medicare
appeals is addressed to CTS in Redlands, California. (Compl.
Ex. A, Ex. B, Ex. D, Ex. G, Ex. H.) CTS's parent corporation,
Caremark RX, Inc. ("Caremark RX") is licensed to do business
in New York, but was incorporated in Delaware and has its
principal place of business in Nashville, Tennessee. (See
Entity Information Report, NYS Dep't of State, Div. of Corps.,
attached as Exhibit C to Pl.'s Br.)[3] Several affiliates of
CTS are also licensed to do business or incorporated in New
York.  (See id.)  The Enrollment Application requires
providers to disclose information about individuals and
entities with an ownership or control interest in the
provider.  See 42 C.F.R. § 420.206; Requirements for
Establishing and Maintaining Medicare Billing Privileges, 68
Fed. Reg. 22064 (proposed Apr. 25, 2003). CTS indicated on
the Enrollment Application that Caremark RX and Caremark
International, Inc. ("Caremark International") had a five
percent or more ownership interest in, and managing control
of, CTS at all relevant times. (Park Decl. Ex. A at 25.)
Caremark International is located in Northbrook, Illinois
(Id.) and is not licensed to do business in New York (Pl.'s
Br. Ex. C).  The instructions to the Enrollment Application

---

[3] Although some of Plaintiff's exhibits are attached its Memorandum of Law
as opposed to its Affadavit and are thus not sworn or certified, the Court
will regard them as true and correct for purposes of this motion.

explain that "[a]ny organization that exercises operational or managerial control over the provider, or conducts the day-to-day operations of the provider, is a managing organization and must be reported" as having managing control. See Requirements for Establishing and Maintaining Medicare Billing Privileges, 68 Fed. Reg. 22064.

## II. DISCUSSION

### A. STANDARD OF REVIEW

Defendants move to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure, asserting improper venue. As the plaintiff, CTS bears the burden of establishing proper venue in this district. See Central Nat.-Gottesman v. M.V. "Gertrude Oldendorff," 204 F. Supp. 2d 675, 677 (S.D.N.Y. 2002); Central Sports Army Club v. Arena Assocs., 952 F. Supp. 181, 188 (S.D.N.Y. 1997). In assessing whether CTS has met this burden, the Court accepts facts alleged in the complaint as true and draws all reasonable inferences in CTS's favor. See Varabiev v. Bank Leumi Le Israel (Switzerland), No. 03 Civ. 3063, 2004 WL 936804, at *2 (S.D.N.Y. Apr. 30, 2004); Central Nat.-Gottesman, 204 F. Supp. 2d at 677. As with a motion to dismiss for lack of subject matter jurisdiction, courts may consider materials outside the pleadings on a motion to dismiss for improper venue. See Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996); Varabiev,

2004 WL 936804, at *2; <u>Burell v. State Farm Fire & Cas. Co.,</u>
No. 00 Civ. 5733, 2001 WL 797461, at *3 (S.D.N.Y. July 12,
2001).

B.   <u>VENUE UNDER 42 U.S.C. § 405(g)</u>

CTS asserts that venue is proper under the Medicare Act,
Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 <u>et</u>
<u>seq.</u>  The Medicare Act provides that individuals or their
representatives who are dissatisfied with a benefits
determination or their representatives are entitled to
judicial review of final determinations of the Secretary as
provided in 42 U.S.C. § 405(g) ("§ 405(g)").  Section 405(g)
further provides that

> [s]uch action shall be brought in the district court of
> the United States for the judicial district in which the
> plaintiff resides, or has his principal place of
> business, or, if he does not reside or have his principal
> place of business within any such judicial district, in
> the United States District Court for the District of
> Columbia.

<u>Id.</u>  CTS asserts that it is a resident of the Southern
District of New York.  The accuracy of this assertion depends
on the resolution of two distinct legal issues.  First, the
Court must consider the meaning of the term "resides" as used
in § 405(g).  Second, the Court must consider whether, and in
what circumstances, the residence of a corporation for
purposes of venue may be based on the residence of its parent

5

or affiliates.  The Court addresses these issues in turn.

1.  The Residence of a Plaintiff Corporation Under
    § 405(g)

CTS asks the Court to give a broad reading to the term
"resides" as used in § 405(g).  The traditional definition of
residence for a corporation is the place of incorporation.
See Pure Oil Co. v. Suarez, 384 U.S. 202, 203 (1966); 17 James
Wm. Moore et al., Moore's Federal Practice § 110.03 (3d ed.
1997).  In various contexts, this definition has been expanded
by Congress and the courts.  However, this case does not
present one of those contexts.  In fact, the traditional
definition of residence has almost always been applied when
the corporation is a plaintiff.  The rare exceptions to this
rule, see, e.g., Upjohn Co. v. Finch, 303 F. Supp. 241, 254
(W.D. Mich. 1969), have now been foreclosed by statute.  See
28 U.S.C. § 1391(c); 15 Charles Alan Wright & Arthur R.
Miller, Federal Practice and Procedure § 1311 (2d ed. Supp.
2005).  Nonetheless, because the meaning of the term "resides"
is perhaps less than crystal clear in the § 405(g) context,
the issue merits some discussion.

CTS relies on 42 U.S.C. § 1391(c) ("§ 1391(c)"), which
defines residence for corporate defendants, for its assertion
that it resides of the Southern District of New York.  This
reliance is misplaced.

Because case law and commentary analysis of these various venue provisions has been conducted against a changing statutory background, some historical context is helpful to this inquiry.  In 1948, Congress revised and recodified the judicial code.  See Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 225 (1957).  The general venue provision, 28 U.S.C. § 1391, incorporated a newly broadened conception of corporate residence, at least with respect to corporate defendants.  See Manchester Modes, Inc. v. Schuman, 426 F.2d 629, 632 (2d Cir. 1970).  Section 1391(c) stated that "[a] corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."  62 Stat. 935 (1948) (current version at 28 U.S.C. § 1391(c) (2000)).

In Manchester Modes, the Second Circuit explained the circumstances which spurred Congress to act to expand venue for corporate defendants:

> As corporations spread their activities through the country, states increasingly made them subject to suit wherever they were "doing business" or could be "found." A corresponding adjustment in federal procedural law, however, did not occur; for venue purposes, the definition of corporate residence as the state of incorporation remained the rule.

426 F.2d at 630.  Congress thus enacted § 1391(c) in

7

"'response to a general conviction that it was intolerable if the traditional concepts of "residence" and "presence" kept a corporation from being sued wherever it was creating liabilities.'" Pure Oil, 384 U.S. at 205 n.3 (internal quotations omitted) (quoting Transmirra Prods. Corp. v. Fourco Glass Co., 233 F.2d 885, 887 (2d Cir. 1956), rev'd on other grounds, 353 U.S. 222 (1957)).

After the enactment of § 1391(c), courts were faced with the question whether that provision applied to define the term "resides" in specific venue statutes. At the same time, they also considered whether the 1948 version of § 1391(c) applied to define the residence of corporate plaintiffs as well as corporate defendants. The Second Circuit answered the second question in the negative. See Manchester Modes, 426 F.2d 629. Congress laid the latter debate to rest in 1988, when it repealed the 1948 statute and adopted a new § 1391(c) which clearly applied only to corporate defendants. See 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3811 (2d ed. Supp. 2005). Section 1391(c) currently provides:

> For purposes of venue under this chapter, a defendant
> that is a corporation shall be deemed to reside in any
> judicial district in which it is subject to personal
> jurisdiction at the time the action is commenced. In a
> State which has more than one judicial district and in
> which a defendant that is a corporation is subject to
> personal jurisdiction at the time the action is

> commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c). The plain language of this provision is clear. Its broad definition of residence of corporations for purposes of venue applies only to "a defendant that is a corporation." Id. However, the § 405(g) inquiry does not end here, as the concept of residence for corporations must be assessed in other contexts.

    2.  Specific Venue Statutes

Both before and after the 1988 revision of § 1391(c), courts have encountered the question whether the broad definition of residence found in that general provision applies to specific venue provisions. Specific venue statutes apply in numerous classes of cases such as antitrust actions, 15 U.S.C. §22; actions for review of Surface Transportation Board orders, 28 U.S.C. § 1398; actions against the United States, 28 U.S.C. § 1402; and a seaman's action for recovery for personal injury, 46 U.S.C. app. § 688. Few courts have analyzed the venue provision in § 405(g). Thus, a review of other venue provisions may be helpful to an understanding of the concept of residence as used in § 405(g).

In Pure Oil, the Supreme Court held that the broad definition of residence for purposes of venue found in the version of § 1391(c) then in force applied to define the term "resides" as used in the venue provision of the Jones Act, 46 U.S.C. app. § 688. See 384 U.S. 202. The Jones Act provides a cause of action for seamen to recover damages for personal injury incurred in the course of their employment. The statute provides that "[j]urisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." 46 U.S.C. app. § 688. The Court found that "the liberalizing purpose underlying [§ 1391(c)]'s enactment and the generality of its language support the view that it applies to all venue statutes using residence as a criterion, at least in the absence of contrary restrictive indications in any such statute." Pure Oil, 384 U.S. at 204-05.

Although the Pure Oil court was addressing the issue of residence for a corporate defendant, this broad language may arguably be read to support the contention that the expanded definition of residence applied to all corporations, whether plaintiffs or defendants. However, the Second Circuit declined to read the language so broadly. In Manchester Modes, the Second Circuit read Pure Oil as addressing only the question of the application of § 1391(c) to "special statutes

permitting venue at the residence of the defendant." 426 F.2d
at 632. Other courts have also explicitly read <u>Pure Oil</u> to
apply only to corporate defendants. <u>See</u>, <u>e.g.</u>, <u>American
Cyanamid Co. v. Hammond Lead Prods., Inc.</u>, 495 F.2d 1183, 1187
(3rd Cir. 1974); <u>Sanders v. Seal Fleet, Inc.</u>, 998 F. Supp.
729, 735 (E.D. Tex. 1998). Even had such a broad reading been
warranted before 1988, Congress's alteration of § 1391(c) in
that year, which made clear that any broad definition of
corporate residence for purposes of venue applies only to
defendant corporations, precludes such a reading today.

### 3. <u>Corporations Suing The Federal Government or its Officers or Employees</u>

There has been little examination of the meaning of the
term "resides" as used in § 405(g) with respect to a corporate
plaintiff. <u>Cf.</u> <u>Always Caring Home Care Servs., Inc. v.
Thompson</u>, No. 01-CV-2089 (N.D. Ga. Feb. 20, 2002) (plaintiff
corporation attempting to lay venue where defendant
purportedly resides); <u>Colorado Clinical Labs, Inc. v.
Sullivan</u>, 715 F. Supp. 985 (D. Colo. 1989) (lack of venue
found when two plaintiffs, Texas corporations, pled no
connection to Colorado and third plaintiff, a Colorado
corporation, was collusively joined solely to lay venue in the
district). Thus it is helpful to look at how the term has
been understood when corporations sue the federal government

11

or its officers or employees under other venue provisions. The general venue provision for actions in which a defendant is an officer or employee of the federal government is § 1391(e), which allows suit to be brought

> in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).[4]

The Second Circuit has recently noted that "'analysis of special venue provisions must be specific to the statute' because Congress's intent may be restrictive in some circumstances and permissive in others." Daniel v. American Bd. of Emergency Med., 428 F.3d 408, 426 (2d Cir. Oct. 7, 2005) (quoting Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193, 204 (2000)). In Cortez, the respondent argued that because Congress was found to have a restrictive intent with respect to some special venue provisions, all special venue statutes should be read restrictively. 529 U.S. at 204. The Court rejected that argument, calling for analysis "specific to the statute." Id. This directive does

---

[4] Congress amended this section in 1990. Before 1990, the provision was divided into four subparts, with the exact text of what is now § 1391(e)(3) then appearing in § 1391(e)(4). Otherwise, the amendment made no changes relevant to this discussion.

not preclude analogy to another venue provision when the congressional purpose of the two provisions is found to be similar. Since, as discussed below, Congress had similar broadening intent for both § 405(g) and § 1391(e), and because of the absence of analysis and precedence concerning the residence of a corporation suing under § 405(g), an examination of § 1391(e), the general venue provision that applies in suits against government officials, may offer a useful analogue in guiding the construction and application of § 405(g).

Section 405(g) was enacted in 1939 at a time when the applicable general venue statute was considerably more narrow than the one in force today. Suits against United States government officers or employees acting in their official capacity could then be brought only in the District of Columbia. See Stafford v. Briggs, 444 U.S. 527, 534 (1980). Thus, § 405(g)'s venue provision, applicable to administrative actions brought under the Social Security Act, made it easier for plaintiffs, who were generally elderly or disabled individuals likely to lack the resources to bring suit in the District of Columbia if they resided in a faraway state, to obtain judicial review. Cf. Stieberger v. Heckler, 615 F. Supp. 1315, 1364 (S.D.N.Y. 1985) (noting the "physical, fiscal and employment-related disabilities" of many Social Security

Act claimants), <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>, 801 F.2d 29 (2d Cir. 1986).

Likewise, when passed in 1962, § 1391(e) addressed the problem of "significant expense and inconvenience" faced by "persons in distant parts of the country claiming injury by reason of the acts or omissions of a federal officer or agency." <u>See</u> <u>Stafford</u>, 444 U.S. at 534. That privision "was enacted to broaden the venue of civil actions which could previously have been brought only in the District of Columbia." <u>Schlanger v. Seamans</u>, 401 U.S. 487, 490 n.4 (1971) (citations omitted).

Recognizing this purpose, courts have considered whether the pre-1988 definition of residence found in § 1391(c) applied to define the residence of corporate plaintiffs suing government officers or employees under § 1391(e). At least one court found that Congress's purpose of expanding the number of districts in which suit against the federal government or its officials could be brought, as expressed in § 1391(e), militated in favor of finding that § 1391(c)'s expansive definition of corporate residence as applied to defendants also extended to corporate plaintiffs suing government officers, employees and agencies. <u>See</u> <u>Upjohn</u>, 303 F. Supp. at 254. However, others, including the Second Circuit, have disagreed. <u>See</u> <u>Manchester Modes</u>, 426 F.2d at

633; <u>see</u> <u>also</u> <u>Reuben H. Donnelley Corp. v. Federal Trade</u>
<u>Comm'n</u>, 580 F.2d 264, 270 (7th Cir. 1978).

As discussed above, in <u>Manchester Modes</u>, the Second
Circuit considered whether the expanded venue provision in §
1391(c) defined residence for corporate plaintiffs for
purposes of federal jurisdiction founded on diversity of
citizenship. 426 F.2d at 629. The plaintiff, a Connecticut
corporation claiming to be doing business in Manhattan, sued
an individual resident of California in the Southern District
of New York. The plaintiff claimed that venue was proper
under § 1391(a), allowing actions where federal jurisdiction
is grounded in diversity to be brought "only in the judicial
district where all plaintiffs or all defendants reside, or in
which the claim arose." <u>Id.</u> at 629-30. The specific question
was whether the plaintiff was a resident of the Southern
District of New York.

The Circuit Court concluded that the expanded definition
of residence for purposes of venue then found in § 1391(c) did
not apply to corporate plaintiffs. In so doing, the court
specifically addressed the argument that § 1391(c) should
define corporate residence for plaintiffs suing government
agencies, officers or employees under § 1391(e). The court
saw "no reason to suppose that Congress did not consider that
the four venue choices afforded under § 1391(e) would suffice

15

even though a plaintiff corporation remained a 'resident' only of the chartering state." Id. at 633.

The Seventh Circuit also examined whether § 1391(c)'s broad pre-1988 definition of corporate residence applied to corporations suing federal government officials under § 1391(e). See Donnelley, 580 F.2d at 268-70. There, the court held that the residence of a plaintiff corporation suing the United States or its officials is its place of incorporation. In doing so, the court considered the appellant's argument that such an interpretation of the term "resides" as used in § 1391(e) "conflicts with the congressional purposes of § 1391(e), namely, to expand the number of judicial districts in which federal defendants can be sued." Id. at 270. The court noted that the appellant had "misconstrued the manner in which Congress chose to broaden the venue provision. It did so by providing for three new bases of venue; there is no legislative history to suppose that Congress also sought to redefine established concepts of residence." Id.

Likewise, in providing plaintiffs with more convenient options for bringing suit under § 405(g), Congress broadened the venue options then otherwise in effect. It may be argued, however, that the analogy is inapt because § 405(g) was passed before any federal legislative attention was paid to the problem of venue for corporations, while § 1391(e) was passed

16

thereafter. Perhaps § 405(g) should not "remain impervious to changes in standards effected by more general venue statutes." Pure Oil, 384 U.S. at 207. But no general venue statute in effect today provides CTS with the hook it needs to lay venue in this district. Residence for corporate plaintiffs, as opposed to corporate defendants, remains the place of incorporation. See 17 James Wm. Moore et al., Moore's Federal Practice § 110.03 (3d ed. 1997).

Furthermore, Congress has demonstrated that it is perfectly capable of amending venue provisions to address specific problems corporate litigants may encounter. That Congress has chosen to do so with respect to corporate defendants, see § 1391(c), and with respect to corporate plaintiffs in specific contexts, see, e.g., 28 U.S.C. § 1402(a), but has not done so in connection with § 405(g)'s residence provision, further counsels against reading § 405(g) more broadly than it is written. Support for the foregoing conclusion may be found from examination of 28 U.S.C. § 1402, which governs venue in suits against the United States, including suits for the recovery of taxes. See 28 U.S.C. § 1402(a); 28 U.S.C. § 1346(a)(1). Enacted in 1948, the statute was amended in 1958 to provide specifically for plaintiff corporations. See 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3821 (2d ed. Supp. 2005). An

individual suing the federal government to recover certain taxes may sue only in the district where he or she resides. See 28 U.S.C. § 1402(a)(1). However, a corporate plaintiff suing for such recovery may sue where its principal place of business, principal office or agency is located, or, if it has no such office or agency in any judicial district, in the judicial district "the office to which was made the return of the tax in respect of which the claim is made," or if no return was made, in the District of Columbia. 28 U.S.C. § 1402(a)(2). The special provision altering venue options for corporate plaintiffs was enacted to resolve a split in authority regarding whether former § 1391(c) applied to corporate plaintiffs for purposes of § 1402(a). 17 James Wm. Moore et al., Moore's Federal Practice § 110.41 (3d ed. 1997). Thus Congress has acted to address venue for corporate plaintiffs in other contexts, and is perfectly capable of doing so with respect to § 405(g). The Court will not step in to alter the traditional meaning of statutory terms absent persuasive reasons to take such action. See Burns v. Alcala, 420 U.S. 575, 580 (1975). CTS has not evinced, and the Court has not found, any such reasons here.

Nor need the Court be concerned that corporate plaintiffs suing under § 405(g) can bring suit only in a state with which their relationship is limited to the act of incorporation.

18

See Upjohn, 303 F. Supp. at 254 (taking judicial notice that many corporations incorporate in Delaware but have no other relationship to that state). Section 405(g) provides that suit may be brought where the plaintiff's principal place of business is located. As discussed above, CTS's principal place of business is in California, thus venue is not proper in this district pursuant to that portion of § 405(g).

For the reasons stated above, the Court concludes that for purposes of venue under § 405(g), a plaintiff corporation resides in its place of incorporation.[5]

## 4. Residence of Federal Defendants

---

[5] The parties have brought to the Court's attention two decisions discussing venue for corporate plaintiffs challenging administrative actions taken under the Medicare program. Unfortunately, these decisions are not particularly helpful to the issue presented here, as the plaintiffs in neither case claimed to reside in the district in which the court hearing the case was located.

In Colorado Clinical Labs v. Sullivan, 715 F. Supp. 985 (D. Colo. 1989), two Texas corporations and a Colorado corporation brought suit challenging the methodology used to determine fee reimbursements under the Medicare program as administered in Texas. Although the plaintiffs had also alleged that a faulty reimbursement calculation methodology was used in Colorado, the court found these allegations conclusory, determined that the Colorado corporation had been joined solely "as part of an attempt to lay venue in [the] district," and thus found venue lacking. Id. at 987. The court referred to both § 405(g) and §1391(e) as venue provisions that may apply to the action. See id. However the court did not discuss whether § 1391(e) applies, nor did it discuss the meaning of the term "resides" as used in either provision, as no party alleged that the Texas corporations resided in Colorado.

In Always Caring Home Services, Inc. v. Thompson, No. 01-CV-2089 (N.D. Ga. Feb. 20, 2002), a home health care provider whose Medicare payments had been suspended sought declaratory and injunctive relief. There the court found that venue was lacking under § 1391(e), § 1402, and § 405(g), without deciding which provision or provisions actually applied. See id., slip op. at 4-7. Again, the plaintiff did not allege that it resided or had its principal place of business in the Northern District of Georgia. Id., slip op. at 2.

Without deciding whether § 1391(e), the general venue provision used when a federal officer or employee is sued in his or her official capacity, is applicable to this action, the Court notes that the venue criteria of that provision are not satisfied here. As discussed in Part (II)(B)(3) above, plaintiff corporations reside in the place of incorporation for purposes of venue under § 1391(e); thus venue in this district would not be proper under § 1391(e)(1). CTS argues that the Defendants reside in the Southern District of New York because they maintain offices at 26 Federal Plaza in Manhattan. However, a federal agency does not reside in a district merely by virtue of having an office in that district. See Schwarz v. IRS, 998 F. Supp. 201, 202 (N.D.N.Y. 1998); Davies Precision Machining, Inc. v. Defense Logistics Agency, 825 F. Supp. 105, 107 (E.D. Pa. 1993). As the Seventh Circuit remarked, "to hold that a federal agency can be sued . . . wherever it maintains an office would, as a practical matter, render [§ 1391(e)'s other subsections] superfluous," because federal agencies are likely to maintain offices in "most, if not all, judicial districts." Donnelley, 580 F.2d at 267. In addition, venue with respect to a federal officer or employee is proper in the place of his or her official residence, where his or her official duties are performed. See id. at 266 n.3; Scaria v. Secretary of U.S. Dep't. of

<u>Agric.</u>, No. 90-CV-9223, 1991 WL 99210, at *1 (E.D.N.Y. May 20, 1991); <u>Archuleta v. Sullivan</u>, 725 F. Supp. 602, 605 (D.D.C. 1989).

CTS has brought suit against the Secretary, who maintains his office in Washington, D.C., and the Centers for Medicare and Medicaid Services, also headquartered in Washington, D.C. Both defendants reside in Washington, D.C. Thus, whether or not § 1391(e) applies to this action, venue in this district would not be proper under that provision.

5.  <u>CTS's Parent and Affiliates</u>

CTS contends that it is a resident of the Southern District of New York because its corporate parent, Caremark RX, and several of its corporate affiliates are licensed to do business in New York. CTS also contends that Caremark RX is the real party in interest.

a.  <u>Attribution of One Corporation's Residence to Another</u>

This case presents the Court with the question whether a corporation's residence can be attributed to its subsidiary or affiliate for venue purposes under § 405(g). CTS's contention appears to raise a question of first impression. Although it is not necessary to articulate a test for determining whether such attribution is appropriate, it is clear that such a result would be warranted only in limited circumstances.

21

Courts generally presume that two corporations are distinct entities in the absence of evidence to the contrary. <u>See</u> <u>Jazini v. Nissan Motor Co.</u>, 148 F.3d 181, 184 (2d Cir. 1998); <u>In Re Ski Train Fire in Kaprun, Austria</u>, 343 F. Supp. 2d 208, 214 (S.D.N.Y. 2000).

For purposes of the general venue statute, corporate defendants reside where they are subject to personal jurisdiction. <u>See</u> § 1391(c); <u>Dave Guardala Mouthpieces, Inc.</u> <u>v. Sugal Mouthpieces, Inc.</u>, 779 F. Supp. 335, 338 (S.D.N.Y. 1991); 17 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 110.03 (3d ed. 1997). Since venue over corporate defendants in the ordinary case will be determined with respect to personal jurisdiction, cases analyzing whether venue is proper under § 1391(c) based on the relationship of a corporate defendant to its parent, subsidiary, or affiliates perform that analysis by looking to personal jurisdiction. Courts have considered what relationship is necessary to assert personal jurisdiction over a defendant corporation based on the contacts of its parent, subsidiary or affiliate with the state in question. <u>See</u>, <u>e.g.</u>, <u>Jazini</u>, 148 F.3d 181, <u>DCA Food</u> <u>Indus. v. Hawthorn Mellody, Inc.</u>, 470 F. Supp. 574 (S.D.N.Y. 1979). In that context, the question is one of state law, because federal courts look to state long-arm statutes to determine whether personal jurisdiction exists.

A corporation may be sued in New York based on the contacts of its parent or subsidiary when the relationship between the parent and subsidiary "validly suggests the existence of an agency relationship or the parent controls the subsidiary so completely that the subsidiary may be said to be simply a department of the parent." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996). To establish that a local subsidiary is an agent of a foreign parent, the subsidiary must be shown to do "all the business which [the parent corporation] could do were it here by its own officials." Frummer v. Hilton Hotels Int'l, Inc., 227 N.E.2d 851, 854 (N.Y. 1967). In determining whether a subsidiary is a mere department of a parent, courts must consider four factors. First, common ownership is required. See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft, Inc., 751 F.2d 117, 120 (2d Cir. 1984). "[N]early identical ownership interests must exist before one corporation can be considered a department of another corporation for jurisdictional purposes." Id. Courts must also consider the "financial dependency of the subsidiary on the parent corporation . . . the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities . . . [and] the degree of control over the marketing and operational

23

policies of the subsidiary exercised by the parent." Id. at 120-22; see also Jazini, 148 F.3d at 184-85.

The Court declines to adopt this test for purposes of determining the residence of a corporation under § 405(g), because regardless of the test used, CTS cannot claim residence in this district by virtue of its relationship to another corporation. The only corporations with which CTS may have the necessary relationship are Caremark RX and Caremark International, as these entities own at least five percent of, and have managing control over, CTS. Caremark RX is incorporated in Delaware. Caremark International is neither incorporated nor licensed to do business in New York. Thus neither Caremark RX nor Caremark International resides in New York. Nor do either of these corporations have their principal place of business in New York. Thus CTS cannot properly bring this action under § 405(g) through its relationship with Caremark RX or Caremark International.

b. The Real Party in Interest

CTS belatedly claims that its parent corporation, Caremark RX is the real party in interest. (Pl.'s Br. 6-7.) It is black letter law that "every action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17; see Rose v. Giamatti, 721 F. Supp. 906, 914 (S.D. Ohio 1989). Yet CTS is the only plaintiff named in this action.

CTS does not explain why Caremark RX did not bring the action itself. In any case, if CTS is bringing the action on behalf of Caremark RX, which it may or may not be entitled to do under Rule 17, it does not follow that CTS may rely on Caremark RX's residence for purposes of laying venue in this district. In any case, as discussed in Part (II)(B)(5)(a) above, Caremark RX does not reside in the Southern District of New York for venue purposes under § 405(g).

### III. CONCLUSION

CTS is incorporated and has its principal place of business in California. No other corporation with which CTS has asserted a relationship such that the Court might ascribe its residence to CTS is incorporated in New York. Nor do any such corporations have their principal place of business in New York. Thus venue is improper in this district under § 405(g).

Since venue is improper in this district, all of CTS's claims are subject to dismissal. When venue is improper, a court must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. §1406(a).

CTS has asked that the Court transfer this action if venue is found to be improper in this district. (Pl.'s Br. 9.) Courts have considerable discretion when deciding whether

25

to dismiss a case or transfer it in the interest of justice. Daniel, 428 F.3d at 435. That a case would be time-barred on refiling in the proper forum is a compelling reason for transfer. Id. Section 405(g) provides that an action for judicial review of a final action by the Secretary must be commenced within 60 days after mailing of the final decision.

At the time of the filing of this action, CTS had not exhausted its administrative remedies with respect to three of its four causes of action. The parties dispute whether administrative exhaustion was necessary with respect to these claims. The Court declines to decide this issue, as the examination of the threshold issue of venue discussed above reveals that this Court is not the proper venue for this action. However, the Court notes that the statute of limitations prescribed in § 405(g) has now run with respect to the one cause of action for which CTS had exhausted its administrative remedies at the time of filing. Thus transfer, as opposed to dismissal, is in the interest of justice.

CTS was incorporated in California, and has its principal place of business in Redlands, California, which is located in the Central District of California. Thus the Central District of California is a proper venue for this action.

### III. <u>ORDER</u>

For the reasons discussed above, it is hereby

**ORDERED** that the motion to dismiss (Docket Nos. 5, 6, and 10 herein) of defendants Michael O. Leavitt, Secretary of the Department of Health and Human Services, and the Centers for Medicare & Medicaid Services (collectively "Defendants") is GRANTED in part and DENIED in part as follows:  That portion of Defendants' motion requesting dismissal for lack of venue is GRANTED to the extent that the Clerk of Court is directed to transfer this action to the Central District of California and to transmit forthwith all papers filed in this action to the Clerk of the District Court for the Central District of California.  That portion of Defendants' motion requesting dismissal for lack of subject matter jurisdiction is DENIED without prejudice to being refiled in the Central District of California as appropriate.

The Clerk of Court is directed to close this case.


**SO ORDERED.**

Dated:     New York, New York
           21 December 2005


                                    _____
                                        Victor Marrero
                                        U.S.D.J.

27